An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

BOBBY SMITH A/K/A BABAK ZAREI,
Appellant,
vs.
COAST HOTELS AND CASINOS, INC.,
A NEVADA DOMESTIC
CORPORATION DOING BUSINESS AS
THE ORLEANS HOTEL AND CASINO,
Respondent.

COAST HOTELS AND CASINOS, INC.,
A NEVADA DOMESTIC
CORPORATION DOING BUSINESS AS
THE ORLEANS HOTEL AND CASINO,
Appellant,
vs.
BOBBY SMITH A/K/A BABAK ZAREI,
Respondent.

No. 62153

**FILED**

JUL 29 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

No. 62589

### ORDER OF REVERSAL AND REMAND

This matter consists of two consolidated appeals stemming from a district court order granting summary judgment in a tort action and a post-judgment order granting in part and denying in part motions for attorney fees and costs. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

Bobby Smith aka Babak Zarei (Smith) was a guest at The Orleans Hotel and Casino (The Orleans) in Las Vegas when he was the victim of an alleged "trick-roll." Smith and an acquaintance invited two women up to his hotel room. All four people went to Smith's room, passing The Orleans' "key watch stand," located at the base of the guest room elevators. Soon after they entered Smith's hotel room, one of the women,

14-24753

Asia Jeter, left the room and went to the casino floor. The parties dispute whether Jeter possessed a room key when she left the room.

Upon arriving downstairs, Jeter met with Roderick Sawyer. Jeter and Sawyer then returned to Smith's guest room, again passing The Orleans' security staff at the key watch stand.[1] Sawyer entered Smith's room and shot him. The Orleans maintains that Sawyer was Jeter's pimp and that he orchestrated this "trick-roll," in which Jeter would gain access to Smith's room and then accompany Sawyer back to Smith's room so that Sawyer could rob him.

As a result of his injuries sustained in the alleged "trick-roll," Smith filed a complaint against The Orleans, alleging (1) negligence; (2) negligent hiring, training and/or supervision; (3) respondeat superior; and (4) res ipsa loquitur. The Orleans filed a motion for summary judgment, arguing that Sawyer's and Jeter's acts were not foreseeable because (1) The Orleans took the basic minimum precautions to ensure the safety of its patrons under NRS 651.015(3)(a); and (2) there were no prior similar acts that would impart knowledge—and thus a duty—on The Orleans under NRS 651.015(3)(b).

In his opposition to the motion for summary judgment, Smith argued that while The Orleans implemented a key watch stand, it failed to follow its own procedures because its security guard failed to prevent a non-guest from entering the guest room tower without showing a key card.

---

[1]The parties dispute whether Jeter or Sawyer showed a key while passing security at the key watch stand. However, this fact goes to the issues of breach and causation in a negligence action, which are both beyond the scope of our inquiry here.

Smith's opposition cited deposition testimony from The Orleans' security officers who stated that the key watch stand was created to "protect from crimes," to "keep the riffraff out," and generally for the safety of the guests in their hotel rooms. Smith also cited a security expert regarding general industry practices. Smith argued that both the security videotape and his expert would demonstrate that there was a breakdown in security at the key watch stand based on general hotel security industry standards, and The Orleans' own policies, procedures, and practices.

At oral argument, the district court deferred ruling on the motion for summary judgment in order to review the videotape of Sawyer and Jeter walking past the key watch stand. One week later, the court granted The Orleans' motion for summary judgment.[2] The district court concluded that (1) "no admissible evidence has been presented that establishes that The Orleans had knowledge of prior similar intentional criminal acts," (2) "The Orleans took basic minimum precautions to prevent criminal conduct," and (3) the actions of Sawyer and the woman did not "establish a breach of duty by the hotel." Smith now appeals.[3]

*Standard of review*

"In a negligence action, summary judgment should be considered with caution." *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1100, 864 P.2d 796, 798 (1993), *superseded by statute on other grounds as stated in Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. ___,

---

[2]The district court order does not include any findings of fact regarding what the videotape actually showed.

___, 265 P.3d 688, 691 (2011). Summary judgment is appropriate when, after viewing the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). An issue of material fact is genuine when the evidence is such that a rational jury could return a verdict in favor of the nonmoving party. *Id.* at 731, 121 P.3d at 1031. "This court reviews a district court's grant of summary judgment and its statutory construction determinations de novo." *Mahoney's Silver Nugget*, 127 Nev. at ___, 265 P.3d at 690.

*The district court erred in ruling that an alleged "trick-roll" was unforeseeable as a matter of law*

In an innkeeper negligence action, a plaintiff must establish the four basic elements of negligence: "(1) duty, (2) breach, (3) proximate causation, and (4) damages." *Mahoney's Silver Nugget*, 127 Nev. at ___, 265 P.3d at 690. The duty element is at issue here. Under NRS 651.015(2), an innkeeper has a duty to protect patrons from foreseeable wrongful acts. "The determination of foreseeability as it relates to an innkeeper's duty of care to a patron must be made by the district court as a matter of law." *Mahoney's Silver Nugget*, 127 Nev. at ___, 265 P.3d at 691. This determination is governed by NRS 651.015(3). *Id.*

NRS 651.015(3) provides that a wrongful act is not foreseeable unless: (a) the owner failed to exercise due care; or (b) similar prior incidents occurred on the premises and the owner had notice or knowledge of those incidents. In analyzing the "due care" language in the first option, this court has concluded that "due care" allows a judge to "look beyond the

existence of similar wrongful acts in determining the existence of a duty," and evaluate "any other circumstances related to the exercise of due care." *Mahoney's Silver Nugget*, 127 Nev. at ___, 265 P.3d at 692 (internal quotations omitted). Thus, in order to survive summary judgment, Smith was required to establish that the wrongful act was foreseeable under either NRS 651.015(3)(a) or NRS 651.015(3)(b).

Here, the record supports the conclusion that The Orleans was on notice that "trick-rolls" or other violent crimes could occur if non-guests were allowed access to casino hotel room towers. While *Mahoney's Silver Nugget* provides the appropriate legal structure for this court's analysis, this case is factually distinguishable from *Mahoney's Silver Nugget*. In *Mahoney's Silver Nugget*, a group of patrons arrived at a public lounge, were spotted by security, and were asked to leave within five minutes of their arrival. 127 Nev. at ___, 265 P.3d at 690. As the group was being escorted out of the casino by security, one member of the group began arguing with a patron who was sitting at a bar adjacent to the lounge. *Id.* Over a period of approximately ten seconds, the two engaged in a physical altercation, during which one man was fatally shot. *Id.* Based on those facts, this court concluded that Mahoney's Silver Nugget did not owe a duty to the victim as a matter of law. *Id.* at 693. However, unlike in *Mahoney's Silver Nugget*, where the event occurred in a public area on the casino-lounge floor, this event occurred in the guest room tower beyond the security key checkpoint. The location of this alleged "trick-roll"—the guest room tower—is an area of heightened security in which guests are more vulnerable to certain crimes, such as robberies or sexual assaults, making such an occurrence foreseeable.

Here, the record demonstrates that the district court failed to view the competing evidence in the light most favorable to Smith. First, the very fact that The Orleans itself refers to this crime as a "trick-roll" indicates that it was aware that such crimes may occur if non-guests are allowed access to guest room towers. Additionally, The Orleans' security staff acknowledged that it has a duty to keep non-guests from reaching the hotel tower to "protect from crimes" and for the general safety of its guests. As a result, we conclude that the district court erred in granting summary judgment on the issue of duty.

We note that under NRS 651.015, the district court was only tasked with determining whether such a crime was foreseeable, thereby imposing a duty on The Orleans. In light of this limitation, the district court's conclusions of law finding (1) that Jeter showed a room key card to security, solely based on the deposition testimony of Donald Moore; and (2) that "[a]n alleged prostitute or the perpetrator . . . gaining entrance with the use of a room card key does not establish a breach of duty by the hotel" were error because the issues of breach, causation, and damages are factual issues that should be left to the trier of fact. Additionally, there is conflicting evidence in the record regarding whether Jeter possessed a room key card when she initially left Smith's room and whether Jeter and Sawyer showed a key card when returning to Smith's room. These are disputed material issues that must be resolved by a trier of fact. As a result, we conclude that the district court erred in making findings of fact and conclusions of law that (1) are reserved for the trier of fact, and (2)

that did not view the conflicting evidence in the light most favorable to Smith. Accordingly, we[4]

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for further proceedings consistent with this order.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc: Hon. Michael Villani, District Judge
Hon. J. Charles Thompson, District Judge
Carolyn Worrell, Settlement Judge
Hawkins Melendrez, P.C.
Thorndal Armstrong Delk Balkenbush & Eisinger/Las Vegas
Eighth District Court Clerk

---

[4]In light of this disposition, we vacate the district court order granting in part The Orleans' motion for attorney fees and costs. *See Miller v. Jones*, 114 Nev. 1291, 1300, 970 P.2d 571, 577-78 (1998) (vacating a district court award of attorney fees upon reversing the district court order granting summary judgment). Additionally, we need not address the parties' remaining arguments.